FILED & ENTERED

MAY 08 2008

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY gonzalez DEPUTY CLERK

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

| | |
|---|---|
| In re:<br><br>    LUIS A. MORALES,<br><br><br><br><br><br>                              Debtor. | Case No. 2:08-bk-11017 ER<br><br>Chapter 7<br><br>**MEMORANDUM OF DECISION RE:**<br>**VEHICLE VALUATION UNDER**<br>**11 U.S.C. § 506(a)(2)**<br><br>Date:    April 30, 2008<br>Time:    10:00 A.M.<br>Place:   Ctrm. 1568, 15th Fl.<br>         255 E. Temple Street<br>         Los Angeles, CA 90012 |

This case requires the Court to determine the appropriate method for calculating the replacement value of a vehicle under the retail value standard of the second sentence of 11 U.S.C. § 506(a)(2). For the reasons discussed _infra_ in Part III, the Court concludes that, absent unusual circumstances, the retail value for vehicles under § 506(a)(2) should be calculated by adjusting either the Kelley Blue Book retail value or the National Automobile Dealers Association ("N.A.D.A.") Guide retail value by a reasonable amount in light of evidence

presented regarding condition, the retail market, and other relevant factors. In this case, the Court sets the retail value of the Vehicle for purposes of § 506(a)(2) at $10,126.00 in consideration of the limited evidence presented.

## I.  **Jurisdiction**

As a general principle, bankruptcy courts exercise jurisdiction by referral over all core bankruptcy proceedings. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(a), 28 U.S.C. § 157, and General Order No. 266 of the U.S. District Court for the Central District of California.

## II.  **Statement of Facts and Procedural History**

On January 25, 2008, Debtor Luis A. Morales ("Debtor") filed a voluntary Chapter 7 petition. See Dkt. 1.

On March 9, 2008, the Debtor filed the Debtor's Motion for Authority to Redeem Personal Property and Approval of Associated Financing Under 11 U.S.C. § 722 ("Motion"). In the Motion, the Debtor seeks to redeem a 2006 Chrysler Sebring Touring 4D ("Vehicle") from Creditor HSBC Auto Finance ("HSBC") pursuant to § 722. The Debtor does not address directly the condition of the Vehicle and submits no declaration in support of the Motion. The information included on Exhibit 1 of the Motion suggests, however, that the Vehicle was in "fair" condition on February 18, 2008, and has mileage of approximately 47,600 miles. The Debtor asserts that redemption is allowed under § 722 because the Vehicle is personal property

intended primarily for personal, family, or household use, the Debtor's interest in the Vehicle is exempt, and the debt represents a dischargeable consumer debt. See Motion at 2, ¶¶ 3, 5.

The Debtor argues that the appropriate retail value of the Vehicle under § 506(a)(2) for purposes of redemption is $8,995.00. In support of this proposed valuation, the Debtor submits two valuation reports from Collateral Valuation Services, LLC ("Collateral Valuation Services"). The valuation reports were prepared in reliance on an AutoTrader.com advertisement and a Manheim report. The AutoTrader.com advertisement lists a purchase price of $8,995.00 for a car of the same age and model with mileage of 26,543 miles. The AutoTrader.com advertisement is dated February 18, 2008. The Manheim report lists an estimated retail price of $8,950.00 for a car of the same age and model. The retail value of the Manheim report is based on transactions from the week of February 18 to February 25, 2008.

On March 19, 2008, HSBC filed the Opposition to Debtor's Motion to Redeem Personal Property Under 11 U.S.C. § 722 ("Opposition"). See Dkt. 22. In the Opposition, HSBC does not challenge the Debtor's assertion that redemption is allowed, but argues that the proposed redemption value of $8,995.00 is not an accurate retail price for purposes of § 506(a)(2). Rather, HSBC asserts that the appropriate value of the Vehicle for purposes of redemption is $13,550.00. Opposition at 2. In support of this proposed valuation, HSBC submits a Kelley Blue

Book value, which lists a suggested retail value of $13,550.00 for a car of the same age and model with mileage of 35,028 miles. The Kelley Blue Book retail value presupposes that the car is in "excellent" condition. HSBC alleges that the Debtor has based his proposed value on an advertisement at the extreme low end of advertised retail prices.

HSBC argues further that the new § 506(a)(2) overturned prior caselaw interpreting § 506(a) to the extent that it permitted the value of personal property acquired for personal, family, or household use in individual Chapter 7 and 13 cases to be determined based on the property's wholesale value instead of its retail value. Opposition at 2.

On April 23, 2008, the Debtor filed the Reply Memorandum in Support of Debtor's Motion to Redeem Personal Property and Approval of Associated Financing Under 11 U.S.C. 722 ("Reply"). See Dkt. 25. In the Reply, the Debtor emphasizes that the plain language of § 506(a)(2) does not require a court to select a retail value at the average or high end of the retail spectrum. Reply at 2. Accordingly, the Debtor reasons that the original AutoTrader.com advertisement submitted with the Motion, even if at the low end of the spectrum, represents an appropriate value for purposes of § 506(a)(2).

In addition, the Debtor submits two new AutoTrader.com advertisements in support of his proposed valuation. The first additional AutoTrader.com advertisement lists a purchase price of $9,995.00 for a car of the same age and model with mileage

of 32,925 miles. The advertisement is dated March 15, 2008.[1]

Next, the second additional AutoTrader.com advertisement lists a purchase price of $8,999.00 for a car of the same age and model with mileage of 69,165 miles. The advertisement is dated March 18, 2008.

Finally, the Debtor further submits a Kelley Blue Book value which lists a suggested retail value of $12,515.00 for a car of the same age and model with mileage of 46,000 miles. The Debtor argues that even if the Kelley Blue Book retail value were the appropriate standard, the Kelley Blue Book value submitted by HSBC is inaccurate. Reply at 5.

The Court held a hearing on the Motion on April 30, 2008. In advance of the hearing, the Court issued a tentative ruling as to its preliminary determination of value. The Debtor submitted on the Court's tentative ruling and did not appear at the hearing. HSBC appeared at the hearing but presented only brief arguments. At the close of the hearing, the Court adopted its tentative ruling and determined the value of the Vehicle to be $10,126.00.

The Court issues this opinion in order to explain in full its approach to vehicle valuation under the retail value standard of § 506(a)(2).

---

[1] The Debtor notes that identical vehicle identification numbers and AutoTrader.com identification numbers are listed in both the $9,995.00 advertisement and the original $8,995.00 advertisement. The Debtor acknowledges that the advertisements may be selling the same car at different prices. The advertisements, however, list different exterior colors, different interior colors, different mileage, and different sellers. As a result, the ultimate reliability of these two advertisements as distinct advertisements remains open to some doubt.

**III. <u>Discussion</u>**

A. <u>The Bankruptcy Code Allows Individual Debtors to Redeem Certain Vehicles Intended for Personal, Family, or Household Use Under 11 U.S.C. § 722</u>

The Bankruptcy Code authorizes individual debtors to redeem personal property intended for personal, family, or household use in certain circumstances by paying the lienholder the full amount of the allowed secured claim at the time of redemption. 11 U.S.C. § 722. Section 722 provides in full:

> An individual debtor may, whether or not the debtor has waived the right to redeem under this section, redeem tangible personal property intended primarily for personal, family, or household use, from a lien securing a dischargeable consumer debt, if such property is exempted under section 522 of this title or has been abandoned under section 554 of this title, by paying the holder of such lien the amount of the allowed secured claim of such holder that is secured by such lien in full at the time of redemption.

11 U.S.C. § 722. This Court has previously articulated its general approach to redemption under § 722 in the case of <u>In re Lopez</u>, 224 B.R. 439 (Bankr. C.D. Cal. 1998). Under that approach, the proper date for valuation of property under § 722 is the date of the hearing on the redemption motion. <u>In re Lopez</u>, 224 B.R. at 444. <u>But see</u> <u>In re Eagle</u>, 51 B.R. 959, 962 (Bankr. N.D. Ohio 1985) (date of valuation is petition date).

Here, as a general matter, the Debtor and HSBC agree that the Debtor is eligible to redeem the Vehicle under § 722. The parties do not dispute that the Debtor is an individual debtor

in Chapter 7, that the Vehicle is personal property intended primarily for personal, family, or household use, and that the interest of the Debtor in the Vehicle is exempt.

## B. Valuation Under 11 U.S.C. § 506(a) Generally

11 U.S.C. § 506(a) governs the valuation of allowed claims in bankruptcy cases. The current version of § 506(a) was substantially amended as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub. L. No. 109-8, 119 Stat. 23 (2005). In full, § 506(a) provides as follows:

> (a)(1) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

> (2) If the debtor is an individual in a case under chapter 7 or 13, such value with respect to personal property securing an allowed claim shall be determined based on the replacement value of such property as of the date of the filing of the petition without deduction for costs of sale or marketing. With respect to property acquired for personal, family, or household purposes, replacement value shall mean the price a retail merchant would charge for property of

> that kind considering the age and condition of the
> property at the time value is determined.

11 U.S.C. § 506(a). As of yet, the changes, if any, made by § 506(a)(2) to the method for determining the value of personal property acquired for personal, family, or household use in individual Chapter 7 and Chapter 13 cases have received only modest consideration in the published caselaw, as discussed *infra* in Part III.D.


### C. Pre-BAPCPA Valuation of Vehicles Under 11 U.S.C. § 506(a)

Prior to BAPCPA, the Bankruptcy Code and caselaw had established that the value of a vehicle was to be determined based on its replacement value. *Cf*. *Assocs. Commercial Corp. v. Rash*, 520 U.S. 953 (1997) (adopting a replacement value standard under § 506(a) for purposes of Chapter 13 cram down). In *Rash*, the U.S. Supreme Court adopted a replacement value standard under § 506(a), and defined replacement value as "the price a willing buyer in the debtor's trade, business, or situation would pay a willing seller to obtain property of like age and condition." *Assocs. Commercial Corp. v. Rash*, 520 U.S. at 959, n.2. Although the *Rash* Court established the general standard, the Court entrusted to bankruptcy courts the appropriate method for determining replacement value on a case-by-case basis:

> Our recognition that the replacement-value standard,
> not the foreclosure-value standard, governs in cram
> down cases leaves to bankruptcy courts, as triers of

fact, identification of the best way of ascertaining replacement value on the basis of the evidence presented. Whether replacement value is the equivalent of retail value, wholesale value, or some other value will depend on the type of debtor and the nature of the property.

Assocs. Commercial Corp. v. Rash, 520 U.S. at 965, n.6 (citations omitted).

In the Ninth Circuit, bankruptcy courts have generally determined the value of vehicles under § 502(a) on a case-by-case basis. See Taffi v. United States (In re Taffi), 96 F.3d 1190, 1193 (9th Cir. 1996) (en banc), cert. denied, 521 U.S. 1103 (1997). Previously, in the case of General Motors Acceptance Corp. v. Mitchell (In re Mitchell), 954 F.2d 557 (9th Cir. 1992), overruled by Taffi v. United States (In re Taffi), 96 F.3d 1190, 1193 (9th Cir. 1996) (en banc), cert. denied, 521 U.S. 1103 (1997), the U.S. Court of Appeals for the Ninth Circuit had concluded that a vehicle's value under § 506(a) should be calculated based on wholesale value instead of retail value. In re Mitchell, 954 F.2d at 560. The Ninth Circuit subsequently overruled In re Mitchell and established that courts were to determine value in light of the fair market value. In re Taffi, 96 F.3d at 1193. The Taffi court thereby overruled the then-existing wholesale standard for vehicle valuation under In re Mitchell, but declined to establish a set approach for vehicle valuation. See id. Rather, the Taffi court cautioned as follows: "We make no judgment whether the fair market value of an automobile is high blue book or low blue book or some other value; that value is to be determined by the

facts presented to the bankruptcy court." Id. As a result, In re Taffi left the determination of value under § 506(a) to bankruptcy courts in light of the factual considerations identified in each case.

Traditionally, the date of valuation under § 502(a) depends on the particular context of the valuation. See 4 Collier on Bankruptcy ¶ 506.03[10], p. 506-99 (rev. 15th ed. 2006). Courts disagree, however, as to the appropriate dates to be used in a variety of contexts. In the context of redemption, as noted supra in Part III.A, this Court has valued property as of the hearing date on the redemption motion. In re Lopez, 224 B.R. 439, 444 (Bankr. C.D. Cal. 1998); see In re King, 75 B.R. 287, 290 (Bankr. S.D. Ohio 1987). By contrast, other courts have concluded that property should be valued as of the petition date. In re Eagle, 51 B.R. 959, 962 (Bankr. N.D. Ohio 1985).

### D. Post-BAPCPA Valuation of Vehicles Under 11 U.S.C. § 506(a)(2)

In 2005, under the BAPCPA amendments, Congress refined the approach to valuation of personal property in individual Chapter 7 and Chapter 13 cases by adding the new § 506(a)(2). Section 506(a)(2) ostensibly follows the general replacement standard articulated by Rash but the second sentence provides that the "replacement value" for property acquired for personal, family, or household use is defined as "the price a retail merchant would charge for property of that kind

considering the age and condition of the property at the time value is determined." 11 U.S.C. § 506(a)(2).

The Bankruptcy Code, however, does not articulate a specific method for calculating the retail value of a vehicle or any other personal property. Similarly, the legislative history sheds little insight on the correct valuation method. See H.R. REP. No. 109-31, pt. 1 (2005); In re Carlson, No. 06-40402, 2006 WL 4811331, at *2 (Bankr. W.D. Wash. Dec. 8, 2006). As a result, the courts are faced with the task of interpreting the meaning of retail value under § 506(a)(2) and determining the appropriate method for calculating such value for vehicles.

### 1. Retail Value Under 11 U.S.C. § 506(a)(2)

The appellate courts of the Ninth Circuit have not yet established a specific post-BAPCPA method for calculating the retail value of vehicles under the second sentence of § 506(a)(2). See In re Carlson, 2006 WL 4811331, at *2. At least two bankruptcy courts, however, have articulated approaches for valuation under § 506(a)(2). See In re Cheatham, No. 07-40509-13-abf, 2007 WL 2428046 (Bankr. W.D. Mo. June 19, 2007) (calculating retail value of car by reducing the N.A.D.A. Guide retail value by 5%); In re Coleman, 373 B.R. 907, 912-13 (Bankr. W.D. Mo. 2007) (decision by the same court as In re Cheatham, following its earlier decision); In re Carlson, 2006 WL 4811331, at *2-3 (calculating retail value of mobile home under § 506(a)(2) in reliance on N.A.D.A. Guide retail value). It is too soon to know whether these decisions herald a

specific trend in the Ninth Circuit. Nonetheless, <u>In re
Carlson</u>, <u>In re Cheatham</u>, and <u>In re Coleman</u> all rely on the
N.A.D.A. Guide retail value as an appropriate starting point
for determining retail value under § 506(a)(2).

In other circuits, courts interpreting the second sentence
of § 506(a)(2) have adopted a variety of methods for
calculating retail value. This caselaw, although still
developing, offers at least some further insight on valuation
under § 506(a)(2). See <u>In re De Anda-Ramirez</u>, 359 B.R. 794, 796
(B.A.P. 10th Cir. 2007) (holding that bankruptcy court's use of
Kelley Blue Book private party value instead of Kelley Blue
Book retail value not reversible error without determining
appropriate method); <u>In re Clark</u>, No. 06-31965, 2007 WL 671346
(Bankr. N.D. Ohio Feb. 27, 2007) (calculating retail value of
car as the midpoint between two proffered retail values); <u>In re
Kidwell</u>, No. 06-14087, 2007 WL 2934866, at *5 (Bankr. E.D.
Tenn. Oct. 4, 2007) (calculating retail value of car based on
Kelley Blue Book private party value based on appraiser
testimony that private party value approximates retail price if
paid in cash in full); <u>In re Ortiz</u>, No. 06-16243-BKC-RBR, 2007
WL 1176019, at *2-3 (Bankr. S.D. Fla. Fed. 27, 2007)
(calculating retail value of car by deducting the hypothetical
cost of repairs from the retail value established by expert
testimony); <u>In re Brown</u>, No. 06-00197-JW, 2006 WL 3692609, at
*3 (Bankr. D.S.C. April 24, 2006) (calculating retail value of
car in reliance on appraiser's report submitted by creditor);
<u>In re Eddins</u>, 355 B.R. 849, 852 (Bankr. W.D. Okla. 2006)
(calculating retail value of car by reducing N.A.D.A. Guide

retail value by appropriate amount based on any evidence submitted by parties in interest); In re Mayland, No. 06-10283, 2006 WL 1476927, at *3 (Bankr. M.D.N.C. May 26, 2006) (calculating retail value of car as 90% of N.A.D.A. Guide retail value, less cost of necessary repairs); see also In re Finnegan, 358 B.R. 644, 650 (Bankr. M.D. Pa. 2006) (discussing valuation under § 506(a)(2) generally but concluding that the vehicle at issue was not acquired for personal, family, or household use, and thus valuing the vehicle under the first sentence instead of the second sentence). These cases present a range of different, though often similar, approaches to valuation. In general, however, these cases suggest that the emergent approach to valuation under § 506(a)(2) requires bankruptcy courts to reduce the N.A.D.A. Guide retail value, or other appropriate retail value, by an amount appropriate in light of evidence concerning the vehicle's condition.

The leading appellate case on this issue is In re De Anda-Ramirez, 359 B.R. 794 (B.A.P. 10th Cir. 2007), in which the Bankruptcy Appellate Panel for the Tenth Circuit held that a bankruptcy court's use of the Kelley Blue Book private party value of a car instead of the Kelley Blue Book retail value for valuation under § 506(a)(2) was not reversible error. In re De Anda-Ramirez, 359 B.R. at 796. Although the De Anda-Ramirez court declined to establish a specific method for determining retail value, id. at 797, n.3, the court analyzed and rejected the argument that the Kelley Blue Book retail value is necessarily equivalent to the retail value of § 506(a)(2), id. at 797. Rather, the In re De Anda-Ramirez court emphasized that

the Kelley Blue Book retail value should not be adopted automatically as the § 506(a)(2) retail value:

> Other than both containing the word "retail," the Code and [the Kelley Blue Book] definitions have little in common. The Bankruptcy Code's definition of "retail" includes an adjustment for the age and condition of the vehicle; KBB defines "retail" as the price for a vehicle that is in "excellent condition" with the proviso that less than 5% of vehicles for sale qualify as "excellent." Clearly, these two are not equivalent and . . . reliance on the KBB retail value is misplaced.

Id. at 797.

## 2. Valuation Date Under 11 U.S.C. § 506(a)(2)

The new § 506(a)(2) also requires courts to determine the correct date of valuation, i.e., the date as of which the value of the property is to be calculated. The majority of courts to consider § 506(a)(2) have not expressly addressed this issue. At first glance, the date of valuation for personal property acquired for personal, family, or household use in individual Chapter 7 or Chapter 13 cases may appear readily ascertainable based on the plain language of the statute. A second glance, by contrast, reveals that § 506(a)(2) remains open to two plausible interpretations. See In re Ortiz, 2007 WL 1176019, at *2-3. The first sentence of § 506(a)(2) establishes that if the property is personal property in an individual Chapter 7 or Chapter 13 case then replacement value should be calculated "as of the date of the filing of the petition." 11 U.S.C. §

506(a)(2). The second sentence, however, provides that if the property was acquired for personal, family, or household purposes, then "replacement value shall mean the price a retail merchant would charge for property of that kind considering the age and condition of the property *at the time value is determined*." 11 U.S.C. § 506(a)(2) (emphasis added).

The issue is whether the clause "at the time value is determined" changes the date of valuation for property valued under the second sentence of § 506(a)(2). Courts must determine the proper interaction between the two sentences and set the correct date of valuation.

On the one hand, some courts have concluded that valuation under the retail value standard of § 506(a)(2) requires valuation as of the petition date. See In re Brown, 2006 WL 3692609, at *3 (calculating value as of the petition date); In re Mayland, 2006 WL 1476927, at *3 (same); see also In re Kidwell, 2007 WL 2934866, at *4 (holding that petition date is correct date of valuation but using post-petition appraisals to determine value because only evidence available). Under this reasoning, the first sentence uniformly establishes the valuation date as "the date of the filing of the petition" for all replacement values calculated under the aegis of § 506(a)(2). Although the second sentence further specifies the retail value sub-standard for property acquired for personal, family, or household purposes, the date of valuation for the sub-standard remains controlled by the date of valuation specified in the super-standard of the first sentence. In order

to give meaning to the clause "at the time value is determined" without establishing a new valuation date, this interpretation reads the clause as referring back to the petition date standard of the first sentence, *i.e.*, "at the time *as of which* value is determined."

On the other hand, other courts have concluded that valuation under the retail value standard of the second sentence of § 506(a)(2) requires valuation as of the valuation hearing. See In re Cheatham, 2007 WL 2428046, at *2 (using the retail value "at the time the determination is being made"); In re Coleman, 373 B.R. at 912 (same court, same holding); see also 4 Collier on Bankruptcy ¶ 506.03[10], p. 506-100 (rev. 15th ed. 2006); cf. In re Ortiz, 2007 WL 1176019, at *2 (calculating value as of the hearing date, without resolving the issue, because parties submitted no evidence of value at the petition date). Under this reasoning, the first sentence establishes a valuation date that applies only for personal property in individual Chapter 7 and Chapter 13 cases that was not acquired for personal, family, or household purposes. See In re Finnegan, 358 B.R. at 648 (concluding that where individual debtor in Chapter 13 purchased vehicle for her husband to use in his business the value of the vehicle was to be determined at the petition date under the first sentence of § 506(a)(2) instead of the second sentence). By contrast, when the personal property at issue was acquired for personal, family, or household purposes, then the second sentence of § 506(a)(2) displaces the valuation date of the first sentence and provides that the valuation date is "at the time value is

determined." This interpretation reads the clause as referring to the date of the valuation hearing, *i.e.*, "at the time value is determined *by the court*." [2]

The legislative history of BAPCPA offers only modest additional insight as to the correct date of valuation for property under § 506(a)(2). In general, the legislative discussion of the scope and effect of § 506(a) mirrors the statutory language. Some legislative guidance, however, may be available to the extent that the legislative history uses language different from the statutory language:

> Section 327 of the Act amends section 506(a) of the Bankruptcy Code to provide that the value of an allowed claim secured by personal property that is an asset in an individual debtor's chapter 7 or 13 case is determined based on the replacement value of such property as of *the filing date of the bankruptcy case* without deduction for selling or marketing costs. With respect to property acquired for personal, family, or household purposes, replacement value *is* the price a retail merchant would charge for property of that kind considering the age and condition of the property at the time *its* value is determined.

H.R. REP. NO. 109-31, pt. 1, at 83 (2005) (emphasis added to highlight differences between the legislative history and the statutory language). For courts that conclude that the statutory language of § 506(a)(2) is ambiguous, the nuances of the legislative history may suggest some limited guidance.

---

[2] More precisely, the retail value would be calculated as of "the time value is determined," which refers to the date on which the court makes its final value determination. In some cases, this date could be after the hearing date if the court took the matter of valuation under submission or required the parties to submit additional evidence after the hearing.

On the whole, § 506(a)(2) raises a variety of questions regarding the appropriate method for calculating the retail value of personal property acquired for personal, family, or household use in individual Chapter 7 and Chapter 13 cases. Neither the courts of the Ninth Circuit nor the courts of other circuits have established a uniform method for calculating the retail value of vehicles under the second sentence of § 506(a)(2).

E. This Court Concludes that the Retail Value of Vehicles Valued Under the Second Sentence of 11 U.S.C. § 506(a)(2) Should Be Calculated by Adjusting the Kelley Blue Book or N.A.D.A. Guide Retail Value By a Reasonable Amount Based on Evidence Presented Regarding the Vehicle's Condition and Other Relevant Factors

After reviewing the statute, the available caselaw, and the arguments of the parties, this Court concludes that the correct method for calculating the retail value of a vehicle under § 506(a)(2) ultimately depends on the facts presented in each case. Cf. Taffi v. United States (In re Taffi), 96 F.3d 1190, 1193 (9th Cir. 1996), cert. denied, 521 U.S. 1103 (1997). As a general principle, however, this Court further concludes that, absent unusual circumstances,[3] the retail value should be calculated by adjusting the Kelley Blue Book or N.A.D.A. Guide retail value for a like vehicle by a reasonable amount in light

---

[3] The Kelley Blue Book and the N.A.D.A. Guide retail values may be inappropriate as starting points in some cases, such as where a party in interest demonstrates that the guide retail value is "not useful in the area in which the vehicle would be sold, or . . . is not appropriate in a particular instance." In re Coleman, 373 B.R. 907, 912-13 (Bankr. W.D. Mo. 2007).

of any additional evidence presented regarding the condition of the vehicle and any other relevant factors. See In re Coleman, 373 B.R. 907, 912-13 (Bankr. W.D. Mo. 2007); In re Carlson, No. 06-40402, 2006 WL 4811331, at *2 (Bankr. W.D. Wash., Dec. 8, 2006); In re Eddins, 355 B.R. 849, 852 (Bankr. W.D. Okla. 2006). Value should be calculated as of the petition date, not the valuation hearing. The burden in proving the reasonableness of any deviation from the guide retail value rests with the debtor because the debtor has the best access to information about the condition of the vehicle. See In re Coleman, 373 B.R. at 913; In re Eddins, 355 B.R. at 852. This general approach offers the benefits of standardization and predictability to parties without automatically conflating the artificial guide retail value with the actual retail value of the vehicle.

The Court's decision brings it into line with the general approach of most bankruptcy courts interpreting § 506(a)(2) and with the bankruptcy courts of the Ninth Circuit, as well as the traditional case-by-case approach to valuation established by the Ninth Circuit in In re Taffi. Although the Court declines to adopt a set automatic reduction of the guide retail value, see, e.g., In re Coleman, 373 B.R. at 912-13 (calculating retail value of car by reducing the N.A.D.A. Guide retail value by 5%), the Court agrees with the De Anda-Ramirez court that the Kelley Blue Book retail value is rarely equivalent to the retail value of § 506(a)(2), see In re De Anda-Ramirez, 359 B.R. 794, 797 (B.A.P. 10th Cir. 2007).

In most cases, the showing necessary to justify a downward adjustment from the guide retail value will be minimal because few vehicles have been maintained in the high-quality condition contemplated by the guide retail values. Evidence in support of an adjustment of the guide retail value may include, inter alia, declarations, testimony, see In re Ortiz, No. 06-16243-BKC-RBR, 2007 WL 1176019, at *2-3 (Bankr. S.D. Fla., Fed. 27, 2007) (expert testimony), vehicle advertisements, see In re Clark, No. 06-31965, 2007 WL 671346, at *4 (Bankr. N.D. Ohio, Feb. 27, 2007) (advertisements), expert or appraisal reports, see In re Brown, No. 06-00197-JW, 2006 WL 3692609, at *3 (Bankr. D. S.C., April 24, 2006) (appraiser report), and even private party values, as appropriate. In any declaration in support of a proposed vehicle valuation under § 506(a)(2), a debtor should, if possible, include the following basic information: (1) a description of the vehicle, including any options installed and special features; (2) a description of the condition of the vehicle as of the petition date, including any damage, general deterioration, and past or necessary repairs; (3) the vehicle's mileage as of the petition date; and (4) the age of the vehicle as of the petition date. A debtor may also wish to submit photographs of the vehicle and evidence as to the retail values of other like vehicles for sale by retail merchants in the debtor's geographic area. Evidence of this nature will assist the court in determining whether an adjustment to the guide retail value is warranted.

Nonetheless, the Kelley Blue Book and N.A.D.A. Guide retail values represent the appropriate starting point in

determining retail value under the second sentence of §
506(a)(2) because the plain language of the statute
contemplates "the price a retail merchant would charge" instead
of the price a private party would charge. The first sentence
of § 506(a)(2) provides that the replacement value should be
calculated "without deduction for costs of sale or marketing."
11 U.S.C. § 506(a)(2). Although the second sentence remains
silent as to the costs of sale and marketing, the super-
standard of the first sentence should continue to control the
calculation of replacement value to the extent that the second
sentence does not articulate a different sub-standard.

Unlike the private party value, the retail value better
approximates a price that includes the "costs of sale and
marketing," as well as other costs generally included as part
of a merchant's retail price, by taking into consideration the
cost of sale, the cost of marketing, and the dealer's profit.[4]
Whatever the wisdom of this valuation approach, compare 11
U.S.C. § 506(a)(2) with Assocs. Commercial Corp. v. Rash, 520
U.S. 953, 956, n.6 (1997) (discussing adjustments to retail

---

[4] The Kelley Blue Book defines its retail value as follows: "The Kelley Blue
Book Suggested Retail Value is representative of dealers' asking prices and
is the starting point for negotiation between a consumer and a dealer. This
Suggested Retail Value assumes that the vehicle has been fully reconditioned
and has a clean title history. This value takes into account the dealers'
profit, costs of advertising, sales commissions and other costs of doing
business. The final sale price will likely be less depending on the vehicle's
actual condition, popularity, type of warranty offered and local market
conditions." By contrast, the Kelley Blue Book defines its private party
value as follows: "Private Party Value is what a buyer can expect to pay when
buying a used car from a private party. The Private Party Value assumes that
the vehicle is sold "As Is" and carries no warranty (other than the
continuing factory warranty). The final sale price may vary depending on the
vehicle's actual condition and local market conditions. This value may also
be used to derive Fair Market Value for insurance and vehicle donation
purposes."

value necessary to approximate replacement value), Congress spoke plainly in establishing a retail value standard that includes costs not necessarily associated with the private party value. Ultimately, the guide retail value represents only a starting point in determining retail value under the second sentence of § 506(a)(2), and should be adjusted routinely in light of other evidence presented to the court.

The Court further holds that the second sentence of § 506(a)(2) requires retail value to be determined as of the petition date, not the hearing date. The Court acknowledges that the statutory language is ambiguous and believes that reasonable jurists can come to different conclusions on this issue, as discussed supra in Part III.D.2. Nonetheless, the Court concludes that a full view of the interaction between the first and second sentences of § 506(a)(2) favors valuation as of the petition date. By its own terms, the second sentence only establishes a specific definition of the general term "replacement value" to be used for certain property. The second sentence thus functions to provide a definition for a single term in the first sentence. No more, no less. This definition does not alter the requirement that courts not deduct for costs of sale or marketing, nor should it alter the valuation date established in the first sentence. If Congress had intended to provide for valuation as of the hearing date, Congress could have done so with greater clarity. The ambiguity of the clause "at the time value is determined" suggests that Congress did not intend to alter the valuation date so much as to refer back

to its earlier valuation date.[5] Accordingly, the clause "at the time value is determined," although ambiguous, is best understood within the context of § 506(a)(2) *as a whole* to mean at the time as of which value is determined, *i.e.*, at the petition date.

The Court's approach establishes a single, static date of valuation for all personal property in individual Chapter 7 and Chapter 13 cases. This approach provides greater standardization for valuation under § 506(a)(2), and generally encourages the parties to determine value as promptly as possible. Furthermore, this approach respects the interests of creditors by fixing the value of property, and therefore the extent of any secured claims, as of the earliest date so that creditors need not worry that the secured portion of a claim will fluctuate prior to redemption and throughout the case. The Court notes, however, that in many cases this holding may have little practical effect either because the valuation hearing closely follows the petition date or because the parties provide evidence of value only as of the hearing date.

> F. This Court Concludes that the Retail Value of the Vehicle Should Be Set at $10,126.00 Based on the Evidence Presented

---

[5] The Court's conclusion that the statutory language is ambiguous entitles the Court to consider legislative history in determining meaning. Although the legislative history provides some nuance, as discussed supra in Part III.D.2, the Court finds the legislative history to be equally as ambiguous as the statutory language itself. See H.R. REP. No. 109-31, pt. 1, at 83 (2005). However, the fact that the legislative history does not expressly discuss valuation as of the hearing date reinforces the Court's holding that valuation is to be determined "as of the date of the filing of the petition."

In this case, the Court will use the Kelley Blue Book retail value as the appropriate starting point for calculating the retail value of the Vehicle under the second sentence of § 506(a)(2). No unusual circumstances exist to justify a different starting point. The parties have not submitted any N.A.D.A. Guide values, and the Court need not decide how to resolve any discrepancy between the retail values of the Kelley Blue Book and the N.A.D.A. Guide, if both presented. The parties, however, have presented two different Kelley Blue Book retail values: On the one hand, the Debtor submits a Kelley Blue Book retail value of $12,515.00 for a car of the same age and model with mileage of 46,000 miles. On the other hand, HSBC submits a Kelley Blue Book retail value of $13,550.00 for a car of the same age and model with mileage of 35,028 miles. It remains unclear whether HSBC listed the lower mileage figure in error or whether HSBC believes there to be an actual dispute regarding mileage. Nonetheless, the Court has no reason to distrust the mileage figures proposed by the Debtor, which range from 46,000 to 47,600 miles. Therefore, the Court rejects the Kelley Blue Book retail value proposed by HSBC and accepts the Kelley Blue Book retail value of $12,515.00 proposed by the Debtor as the appropriate starting point for determining retail value.[6]

---

[6] The Court notes that the Kelley Blue Book retail value submitted by the Debtor assumes mileage of only 46,000 miles instead of 47,600 miles, which is the mileage listed on the Collateral Valuation Services reports attached to the Motion. Although the Court will proceed in light of the evidence presented, it appears clear that the Kelley Blue Book retail value for a vehicle with mileage of 47,600 miles would be less than the Kelley Blue Book retail value actually submitted.

Next, the Court must determine the Vehicle's condition as of the petition date. The Debtor does not address directly the condition of the Vehicle as of the petition date in either the Motion or the Reply. In general, the condition of a vehicle might easily be established based predominantly on declarations submitted with the motion. The issue is less clear in this case because the Debtor did not submit any declarations in support of either the Motion or the Reply. However, Exhibit 1 of the Motion indicates that the Vehicle was in "fair" condition as of approximately February 18, 2008, less than one month after the petition date of January 25, 2008, though it remains unclear whether this conclusion is based on a visual inspection by Collateral Valuation Services, or on information provided to Collateral Valuation Services by the Debtor. In any event, the Debtor has presented at least some evidence in support of the conclusion that the Vehicle is in "fair" condition.

By contrast, HSBC argues that the retail value should be calculated based on "excellent" condition instead of "fair" condition. Opposition at 3. HSBC asserts that the Vehicle was purchased approximately nine months prior to the petition date and was likely in "excellent" condition at the time. Opposition at 3. HSBC further alleges that its contract with the Debtor requires the Debtor to maintain the Vehicle in "good" condition. Opposition at 3. In the Reply, the Debtor contends that there is no reason to assume the Vehicle was in "excellent" condition at the time of purchase, and asserts that the contract included with the Opposition does not contain a

specific provision requiring the Debtor to maintain the Vehicle in "good" condition. Reply at 3-4.

For purposes of valuation and based on the limited evidence presented, the Court concludes that the Vehicle was in approximately "fair" condition as of the petition date. Although the Court agrees with HSBC that the Vehicle was likely in "excellent" or "good" condition when purchased, the former condition of the Vehicle has no bearing on the issue of valuation under § 506(a)(2). Rather, valuation is to be determined as of the petition date and in light of the existing age and condition of the vehicle at that time. Similarly, the Court agrees with the Debtor that HSBC has failed to establish that the Debtor was under a contractual obligation to maintain the Vehicle in "good" condition.[7] As a result, the only evidence presented on the issue of condition is the reports from Collateral Valuation Services, which list the Vehicle in "fair" condition.

The Debtor here bears the burden in establishing the condition of the Vehicle as of the petition date. The Court is

---

[7] It remains unclear whether the Debtor in fact agreed to maintain the Vehicle in "good" condition pursuant to the contract with HSBC. HSBC does not identify a specific provision that imposes such a requirement in the single page of the apparently multi-page contract submitted as Exhibit 1 to the Opposition. The Court's review of Exhibit 1 does not reveal any requirement regarding the Debtor's obligation to maintain the Vehicle in a specific condition. Because language in the contract suggests that additional terms were included as part of the contract on subsequent pages, it is possible that HSBC may be correct in its assertions. Nonetheless, in light of the evidence presented, the Court concludes that HSBC has not established the existence of a contractual obligation on the part of the Debtor to maintain the Vehicle in "good" condition. Therefore, the Court need not consider what effect, if any, such a requirement would have on valuation under § 506(a)(2) assuming the Debtor has not maintained the Vehicle in "good" condition.

satisfied that the Debtor has established some evidence, though minimal, that the Vehicle was not in "excellent" condition and that its condition was likely closer to "fair" condition.

As a final step, the Court must determine the reasonable adjustment to the Kelley Blue Book retail value in light of the Vehicle's age and condition as of the petition date. In support of a downward adjustment, the Debtor has submitted three AutoTrader.com advertisements, listing retail prices of $8,995.00, $8,999.00, and $9,995.00, respectively. Although the dates of these advertisements range from February 18 to March 15, 2008, they sufficiently approximate examples of retail prices as of the petition date of January 25, 2008, for purposes of valuation. By contrast, HSBC submits the Declaration of Linda Curzan, in which she declares that HSBC conducted an online search for similar vehicles and found 19 vehicles for sale within a 25-mile radius of the Debtor's residence. Curzan Declaration at 2-3, ¶ 7. Curzan declares that "[o]f the nineteen vehicles available for sale, only one was priced at $8,900.00, while thirteen (13) were listed between $10,000.00 and $14,480.00." Curzan Declaration at 3, ¶ 7. Curzan does not identify the retail value of the remaining five cars listed, nor explain whether the vehicles listed were of the same condition as the Vehicle. The Debtor appears to acknowledge, however, that the AutoTrader.com advertisements represent retail prices at the low end of the spectrum. See Reply at 2-3.

The Court ultimately sets the retail value of the Vehicle at $10,126.00 in light of the limited evidence presented by the parties. The Court reaches this value as the average of the Kelley Blue Book retail value of $12,515.00 and the AutoTrader.com retail values of $8,995.00, $8,999.00, and $9,995.00. The Court acknowledges the inherent arbitrariness created by § 506(a)(2). Other cases may require a different adjustment process based on better or worse evidence, as presented. Nonetheless, the Court believes that the Debtor has not presented sufficient evidence regarding the condition of the Vehicle so as to justify a reduction from the Kelley Blue Book retail value to the lowest of the AutoTrader.com retail values. Moreover, a retail value of $10,126.00 for the Vehicle approximates the highest AutoTrader.com retail value submitted by the Debtor and falls at the low end of the range of retail prices suggested by HSBC. Without better evidence as to the condition of the Vehicle and the full spectrum of retail values of similar vehicles, the Court concludes that $10,126.00 is an appropriate retail value for purposes of the second sentence of § 506(a)(2).

**IV.  <u>Conclusion</u>**

In conclusion, the Court sets the replacement value of the Vehicle under the retail value standard of § 506(a)(2) at $10,126.00. The Debtor may redeem the Vehicle provided that he pays this amount to HSBC at the time of redemption.

The Court will enter an appropriate order.

###

DATED: May 8, 2008

_____
United States Bankruptcy Judge

1

2

**SERVICE LIST FOR ENTERED ORDER**

3

| SERVED ELECTRONICALLY: | SERVED BY U.S. MAIL: |
|---|---|
| **_Attorney for the Debtor_**<br>Donny E Brand<br>Brand & Spellman PC<br>4105 E 7th St<br>Long Beach, CA 90804<br>dbrand@brandspellman.com | **_Debtor_**<br>Luis Alberto Morales<br>4553 August St # 2<br>Los Angeles, CA 90008 |
| **_Attorney for Creditor HSBC_**<br>Timothy J. Silverman<br>12651 High Bluff Drive,<br>Suite 300<br>San Diego, CA 92130<br>tim@sgsslaw.com | **_Request for Special Notice_**<br><br>Ascension Capital Group<br>Attn: HSBC Auto Finance Dept<br>Acct: 500002569613<br>P.O. Box 201347<br>Arlington, TX 76006 |
| **_Chapter 7 Trustee_**<br>Sam S Leslie<br>Leslie, Engell & Associates LLP<br>6310 San Vicente Blvd., Suite 320<br>Los Angeles, CA 90048<br>sleslie@ecf.epiqsystems.com<br>gbaltazar@lesliecpa.com | Recovery Management Systems<br>25 SE 2nd Ave, Suite 1120<br>Miami, FL 33131-1605 |
| **_United States Trustee_**<br>United States Trustee<br>725 S. Figueroa Street, 26th Fl.<br>Los Angeles, CA 90017<br>ustpregion16.la.ecf@usdoj.gov | |